476

County of Albany, Respondent-Appellant, *v.* Capital District Transportation Authority, Appellant-Respondent.

Third Department, May 30, 1974.

*William J. Schoonmaker* for appellant-respondent.

*Robert P. Roche, County Attorney,* for respondent-appellant.
*Harris, Beach & Wilcox* for Rochester-Genesee Regional Transportation Authority, *amicus curiae.*

*Axenfeld, Webb, Marshall, Bersani & Scolaro* for Central New York Regional Transportation Authority, *amicus curiae.*

Cooke, J. This is an appeal from an order of the Supreme Court at Special Term, entered February 4, 1974 in Albany County, which granted an injunction *pendente lite* in a declara-

tory judgment action; and cross appeals from a judgment of the Supreme Court, entered April 1, 1974 in Albany County, upon a decision of the court at a Trial Term which declared that the Capital District Transportation Authority's (CDTA) action in raising bus fares, after a public hearing, complied with section 1307 of the Public Authorities Law and that its alteration of services, insofar as it eliminated certain routes, was contrary to the requirements of section 1305 of that law.

The facts are undisputed. CDTA is a public benefit corporation created under section 2 of chapter 460 of the Laws of 1970. Pursuant to section 1305 of the Public Authorities Law, it filed an Action Plan outlining, *inter alia,* the services it contemplated providing. The plan, which was approved by the Legislatures of all counties involved, stated that " [a] major objective will be to improve the service and management in the following categories: * * * 3. Route changes and route additions to reflect changes in employment centers, residential development and commercial centers. * * * 11. Elimination of unnecessary and duplicating service."

On December 28, 1973, following a public hearing, CDTA decided to increase the fares to $.40. The propriety of that action is no longer disputed, nor can it be in view of our decision in *Matter of County of Rensselaer* v. *Capital Dist. Transp. Auth.* (42 A D 2d 445). Additionally, in order to alleviate certain deficit operations, CDTA also voted to make certain schedule changes providing for some new services and eliminating others. A total of 23 miles of routes were eliminated effective January 20, 1974.

On the appeal, CDTA contends that it has the authority to change fares and schedules without further county approval since its Action Plan had previously been approved and that no amendment to said plan is required. The county responds by arguing that changes in schedules which alter existing services are subject to county approval through the procedure for amending the Action Plan.

In *Matter of County of Rensselaer* v. *Capital Dist. Transp. Auth. (supra,* pp. 447–448) we stated: " the statutory scheme contemplates approval by the County Legislature of any alteration in existing services, the Action Plan to provide the county with notice of such proposed alterations. However, mere scheduling changes are not a matter for approval by the Legislature (Public Authorities Law, § 1307, subd. 4)."

There we recognized that although scheduling changes alter existing services to some degree, they are not sufficient to require

the Authority to invoke the cumbersome and time-consuming process of amending its Action Plan and securing the requisite approval from the Legislatures of the various counties. Likewise, other minor changes, which inevitably alter existing services to some degree, may be made by the Authority in its continuing task of tailoring its services to meet the changing needs of the commuting public, consistent with the Action Plan. To accept the county's construction would be to place the Authority in an untenable position and would revoke, by judicial construction, much of the flexibility and discretion conferred upon it by statute. By such action we would severely hamper the CDTA's ability to deal promptly with the fluctuating needs of commuters and to swiftly cope with day-to-day problems. Thus, so long as the schedule and route changes are within the scope and direction of the Action Plan approved by the counties, no amendment to the plan is necessary to effectuate them since the Authority has broad powers to take such actions as may be necessary to implement the aims of the plan (Public Authorities Law, § 1306, subd. 13; § 1307, subd. 7). However, in the event that the Authority's proposed changes amount to an alteration of existing services that is so radical or substantial as to amount to either an abandonment of the plan or a significant departure from its goals, then the Authority must amend the plan and secure the requisite approval from the counties. In this manner, the representatives of the people will have a hand in the shaping of goals while the responsibility for implementing procedures to achieve those goals will remain with CDTA, as it should.

In *Matter of County of Rensselaer* v. *Capital Dist. Transp. Auth.* (*supra,* p. 448), we noted that the Action Plan did not speak of any specific alterations to existing services (although, as here, it had the same general plan for route changes, route additions and elimination of unnecessary services) and that the petition was insufficient to support declaratory relief. We therefore did not pass upon the question of whether the threatened elimination of services there was consistent with the plan. By contrast, here the elimination of services is a *fait accompli* and therefore the issue must be decided.

There seems to be no dispute that the eliminated routes had low ridership and, at a time of financial difficulty exacerbated by spiraling fuel costs, were a particular drain on CDTA's resources. Under these circumstances, the Authority had the power to determine such routes to be "unnecessary" and to them consistent with the Action Plan. In so doing, it

did not violate section 1305 of the Public Authorities Law. The issue of the power of the Authority to change schedules, including " headway ", has been decided previously (*Matter of County of Rensselaer* v. *Capital Dist. Transp. Auth., supra,* p. 447).

We conclude that the trial court should have denied plaintiff's prayer for relief and declared that defendant complied in all respects with sections 1305 and 1307 of the Public Authorities Law (see *Marshall* v. *City of Norwich,* 1 A D 2d 498; *Martin* v. *State Liq. Auth.,* 43 Misc 2d 682, 690, affd. 15 N Y 2d 707). In view of the conclusion we reach, defendant's appeal from the order granting an injunction *pendente lite* is academic and is dismissed as such.

Appeal from order entered February 4, 1974 dismissed as academic.

The judgment should be modified, on the law, by reversing so much thereof as declared the elimination of certain services to be contrary to section 1305 of the Public Authorities Law and ordered restoral of the eliminated lines and routes, and by declaring that said actions of the Authority complied in all respects with the law, and, except as so modified, affirmed, without costs.

HERLIHY, P. J., STALEY, JR., SWEENEY and KANE, JJ., concur.

Judgment modified, on the law, by reversing so much thereof as declared the elimination of certain services to be contrary to section 1305 of the Public Authorities Law and ordered restoral of the eliminated lines and routes, and by declaring that said actions of the Authority complied in all respects with the law, and, except as so modified, affirmed, without costs.